EVERS *v.* STATE.

Opinion delivered September 30, 1929.

*W. A. Leach,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

SMITH, J. This appeal is from the judgment of the Arkansas Circuit Court, Southern District, sentencing appellant to death upon the charge of having murdered Terry Miller.

It is very earnestly insisted that the grand jury which returned the indictment was not legally constituted at the time the indictment was returned, and that it was void for this reason. It is also argued that the testimony is not legally sufficient to show that deliberation and premeditation which the law requires to raise an unlawful killing to the grade of murder in the first degree.

It appears that the regular session of the court convened on January 21, 1929, but, on account of an epidemic of influenza in that community, an adjournment was had to the 25th day of February, 1929, at which time the grand jury was duly impaneled. The court remained in session until March 1, 1929, at which time it was ordered that the court be adjourned until May 7, 1929. On February 28, 1929, the grand jury filed a report, which was designated as a "final report," and the circuit clerk entered upon the records of the court an order in which it was recited that the "report is by the court received, and, with the extension of thanks to the members of the jury, the court doth now excuse such jury from further service at this term, subject to call, if needed."

On the night of March 19, 1929, the crime for which appellant was indicted was committed, and, when the court reconvened pursuant to adjournment, appellant had been arrested and was in custody, and the indictment upon which he was tried was returned on the day to which the court had adjourned.

On May 9, 1929, a motion was filed by counsel for appellant to quash the indictment, upon the ground that the grand jury, having been discharged, had become *functus officio,* and had no legal authority to return the indictment. Upon the hearing of this motion, testimony was heard. The clerk of the court, a deputy sheriff, and special counsel representing the State, were sworn, and testified concerning the order which the court had made in regard to the discharge of the grand jury, and the trial judge who had presided at that time made a statement, which was incorporated into the record, and upon this

testimony a *nunc pro tunc* order was entered purporting to show the order which was actually made.

In the case of *Lowe* v. *Hart,* 93 Ark. 548, 125 S. W. 1030, it was said that "a *nunc pro tunc* order is intended to state what the court did, and not what it should have done," and that the recollection of the presiding judge in making such an order must be accepted in the absence of any oral testimony or anything in the record itself to the contrary.

Here the oral testimony did not contradict the recollection of the presiding judge as to the order made, but was corroborative, and we must accept the *nunc pro tunc* order as correctly reciting the order which was in fact made.

This *nunc pro tunc* order recited that the previous order had been erroneously entered by the clerk of the court, and "that on the date said alleged or purported order appears to have been made the court did make an order, after receiving report of the grand jury, allowing the grand jury to go to their homes for the present, but with a distinct and clear statement that the grand jury was neither excused nor discharged, but that it was to and did remain the grand jury of this term and a part of the court for this term, and that their functions as a grand jury were to remain and continue, and this was the order made by the court with respect to the grand jury. The court did not excuse the grand jury for the term, but merely allowed the members thereof to go to their homes, and still retained jurisdiction over said jury. The record is purged *nunc pro tunc* of the erroneous entry, which was inadvertently entered without the consent or approval of the court, and the record is now corrected *nunc pro tunc* to show that the grand jury was never discharged or excused, but that the court did allow the members thereof to retire to their homes, after having stated to the jury that the court was not going to adjourn on that date, but that it would recess over to a future date, stating to the jury the date to which it would

recess. And the court overruled the motion of defendant, and defendant saves his exceptions."

If it should be held that the original order entered by the clerk correctly reflected the order of the court when the grand jury report was filed, and that the effect of this order was to discharge the grand jury for the term (which we do not hold), it must be said that the *nunc pro tunc* order showed that the jury was not discharged, but remained a legally constituted body.

It is true that, under our practice, the grand jury sits as an agency of the court, and can function only during a term of court. But it is not required that the grand jury shall remain continuously in session after being impaneled until finally discharged, nor is its right to sit confined to such days as the court of which it is an adjunct is actually in session, provided the term has not lapsed. The jury itself necessarily has a discretion as to the continuity of its session, subject, however, to any affirmative orders of the court in this behalf.

Of necessity the trial judge must have—and he does have—a wide discretion in such matters. In the case of *McVay* v. *State,* 104 Ark. 629, 150 S. W. 126, a jury was impaneled which later returned a verdict upon which a sentence of death was imposed. The jury was impaneled in that case on February 5, 1912, at which time an order was made adjourning the session of the court to a future day, and in the interval a term of court was held in another county in the circuit, and when the court met pursuant to the adjourning order a motion was made that the trial jury be discharged upon the ground that it had become *functus officio* on account of the holding of a term of court in another county. This motion was overruled, and in affirming that action this court said:

"The statutes of this State provide that 'special adjourned sessions of any court may be held in continuation of the regular term, upon its being so ordered by the court or judge in term time, and entered by the clerk on the record of the court.' Kirby's Digest, § 1531. This

statute confers authority to adjourn to a day beyond the intervening term of court in another county in the same circuit (citing authorities). When the court reconvened, it did not begin a new term, but that constituted a continuation of the old. *Davies* v. *State,* 39 Ark. 448. The court stood as originally organized, and the adjournment over to a certain day did not operate as a discharge of the regular juries, grand and petit, nor of a jury impaneled in a particular case. *Commonwealth* v. *Bannon,* 97 Mass. 214. If the court had the power to order an adjournment over to another day, that necessarily carried with it the power to retain the entire organization as constituted at the time of the adjournment.''

The court had the power to dismiss the grand jury until such time as the service of that body was again needed, as its control over the grand jury was complete so long as the term of court continued, and it is not contended in this case that the term of court had lapsed.

Concerning the assignment of error that the testimony does not support the verdict of the jury, but little need be said. The testimony on the part of the State was to the effect that the deceased, who was the marshal of the town of DeWitt, had in his possession a warrant for the arrest of appellant, which charged appellant with the crime of assault with intent to kill, and appellant was aware of that fact. Appellant made the statement to more than one person, who later testified in the case, that if ''the law,'' as he designated the marshal, attempted to arrest him, he would kill ''the law.'' Miller located appellant in the home of McKinley Fitzpatrick, about nine o'clock at night, where, accompanied by another officer, he went for the purpose of arresting appellant under the warrant in his possession. Appellant and a man named Mann Garrett were engaged in a game of cards in the front room of Fitzpatrick's house when Miller knocked at the front door for admission. Garrett opened the door, and then followed appellant into a middle room of the house, into which Miller proceeded after entering the

house by the front door. When Miller entered this middle room, the firing began, and Garrett was first shot, and then Miller, and the testimony is to the effect that appellant fired the shots which killed both those men, although he had no intention of killing Garrett. The testimony supports the finding that Miller did not fire until after he had been shot, and that appellant commenced firing to make good his threat that he would kill the officer who attempted to arrest him.

The testimony is sufficient to support the verdict, and, as no error appears, the judgment must be affirmed, and it is so ordered.